IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **09CV02589** -PAB-BNB

KENNETH L. SMITH,

     Plaintiff,

v.

HONS. CHRISTINE M. ARGUELLO,
STEPHEN H. ANDERSON,
BOBBY R. BALDOCK,
JAMES E. BARRETT,
ROBERT E. BLACKBURN,
MARY BECK BRISCOE,
WILLIAM J. HOLLOWAY, JR.,
MARCIA S. KRIEGER,
EDWARD W. NOTTINGHAM,
JOHN C. PORFILIO,
STEPHANIE K. SEYMOUR,
DEANELL REECE TACHA, and
TERRY FOX,
STEPHEN J. SORENSON, and
JOHN/JANE DOES 1-50, in their personal capacities only, and
LLOYD B. CLARK,
ERIC H. HOLDER, JR.,
DAVID GAOUETTE,
JEANETTE SWENT,
EDWARD ZAHREN, and
JOHN/JANE DOES 51-99, in their official capacities only, as representatives of
THE UNITED STATES DEPARTMENT OF JUSTICE,

     Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV - 4 2009

GREGORY C. LANGHAM
CLERK

---

## COMPLAINT AND JURY DEMAND

---

    COMES NOW Plaintiff Kenneth L. Smith ("Smith" or "Plaintiff"), *in propria persona*, who

states as follows:

**INTRODUCTION**

[As a matter of course, Smith takes the liberty of explaining the legal grounds upon which he proceeds to the Court -- for, as the redoubtable Senior Judge Kane openly admitted,[1] judges of this District are known to be uniformly hostile to actions filed *in propria persona.* The concept, of course, is to put the defendants on notice as to the unassailably reasonable basis upon which he proceeds.

Smith asks: *What good is a 'Bill of Rights' that can't be enforced?* For a people to enjoy the blessings of living under what John Adams described as "a government of laws, not men," those laws must be knowable, enforceable, and of uniform application. In short, Judge Lucy cannot invite Charlie Brown to kick the football and then, pull it away from him at the last second.

Smith asserts that has an indisputable right to have his grievances heard by a fair and independent tribunal, *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), to the "equal justice under law" boldly chiseled into the frieze of the Supreme Court Building, see *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954), to be able to safely rely on the pronouncements of the Supreme Court as an authoritative statement of what "the law" is, *Moragne v. States Marine Lines,* 398 U.S. 375, 403 (1970), and the right to speak freely on issues of the day and vindicate those rights through legal means without fear of retaliation and intimidation by the government. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); 18 U.S.C. § 241. He is therefore entitled to a meaningful remedy for their invasion, *Marbury v. Madison*, 5 U.S. 137, 163 (1803), for "[t]o take away all remedy for the enforcement of a right is to take away the right itself." *Poindexter v. Greenhow*, 114 U.S. 270, 303 (1884).

For reasons stated herein, the vindication of said rights require that Smith mount a full frontal assault upon the most sacred of judicial cows: absolute immunity. However, as will be made clear, the need to engage in this endeavor is conditioned on the outcome of a 'companion' lawsuit for declaratory and injunctive relief recently filed in the U.S. District Court for the District of Columbia, styled *Smith v. Thomas*, No. 09-cv-1926 (JDB). In essence, if there is still a meaningful alternative remedy for willful judicial caprice at the appellate level, *Bradley v. Fisher*, 80 U.S. 335 (1871) will and ought to stand. However, as Smith is in need of immediate injunctive and declaratory relief, and all claims are based on a common set of facts, they are combined herein.]

---

[1] "I . . . would add only that **all pro se cases,** not just civil rights cases, **are treated shabbily and superficially by our courts.**" John L. Kane III (Senior Judge, District of Colorado), as quoted in, Rules for Unpublished Opinions Violate Due Process, Colorado and California Suits Say, *Know-YourCOurts.com*, Feb. 7, 2008 (emphasis added) (copy of original e-mail on file).

1.  Absolute judicial immunity has always been predicated on the assumption that against the consequences of willful judicial misconduct, "the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort." *Bradley v. Fisher*, 80 U.S. 335, 354 (1871).

2.  Over the fourteen decades since *Bradley v. Fisher* was handed down, our government has systematically eradicated every other conceivable remedy at law that a private party might resort to[2] in the face of willful misconduct by a federal or state judge:

   a.  An action in tort in federal court against a State by a citizen of that State, *Hans v. Louisiana*, 134 U.S. 1 (1890) (re-write of the Eleventh Amendment; *see e.g.,* John Paul Stevens, *"Two Questions About Justice,"* 2003 Ill. L. Rev. 821);

   b.  A civil rights action against a state judge acting within the scope of his jurisdiction, *Pierson v. Ray*, 386 U.S. 547 (1967) ("any person" really means "any person but us judges");

   c.  An action in tort in federal court against the United States for the tortious acts of its authorized agents, *see, Ex parte New York*, 256 U.S. 490 (1921) (inventing sovereign immunity in a land without a sovereign)[3];

---

[2] It seems fairly well established that a private citizen cannot compel criminal prosecution by way of mandamus, *Liverman v. Bush*, 213 Fed.Appx. 675 (10th Cir. Jan. 16, 2007) (unpublished), but that is beside the point, as criminal prosecution would not redress the victims' injuries.

[3] As Justice Scalia has observed (albeit not *ex cathedra*), domestic sovereign immunity was not a part of the English common law known to the Framers. Antonin Scalia, Historical Anomalies in Administrative Law, Supreme Court Hist. Soc'y. (1985), available at http://www.supremecourt-history.org/04_ library/subs_volumes/04_c19_i.html.

   The doctrine can be traced to Chief Justice Jay's statement in dictum in *Chisholm v. Georgia*, 2 U. S. 419 (1793), that "in cases of actions against the United States, there is no power which the courts can call to their aid." Id. At 478 (Jay, C.J.). This ignores the reality, that in a nation borne of violent revolution, by men who claimed that it was a natural right to use lethal force against a tyrant, it beggars the imagination to suggest that the people would tolerate tyrannical conduct by their agents in government, particularly in light of the enactment of the Second Amendment. *See generally, District of Columbia v. Heller*, ___ U.S. ___, 128 S.Ct. 2783 (2008). Justice Holmes' rationale for sovereign immunity -- bizarre, for a man of his intellect -- that "there can be no legal right as against the authority that makes the law on which the right depends," *Kawananakoa v. Polyblank*, 205 U.S. 349, 353 (1907), ignores the fact that our government is only our agent.

d. An action for prospective injunctive and declaratory relief forcing a federal judge to apply the binding law of the jurisdiction to the true facts of a case, *Smith v. Krieger*, No. 08-cv-251-CMA-KMT (D.Colo. Jul. 11, 2009)[4];

e. An action in tort against a state judge acting without colorable jurisdiction, *Smith v. Bender*, No. 09-1003 (10th Cir. Sept. 11, 2009) (effectively overturning the limits on judicial immunity recognized in *Bradley v. Fisher, supra*), and

f. The right to have erroneous or irregular court decision reviewed by the United States Supreme Court, resulting in a published decision which becomes an integral part of the law of the land. Judiciary Act of 1925, 43 Stat. 936 (1925).[5]

3. The judicial power of Article III is necessarily limited by the Good Behavior Clause[6] and emphatically, does not include legal authorization to re-write laws judges find not to their liking. *Heiner v. Donnan*, 285 U.S. 312, 331 (1932) ("to enact a law under the pretense of construing one [is a] flagrant perversion of the judicial power"); The Federalist No. 78 (A. Hamilton) 440 (I. Kramnick ed. 1987) (substitution of the judge's pleasure for that of the legislative body is just as forbidden as legislative over-reaching).

---

[4] Defendant Arguello's ruling appears to be in irreconcilable conflict with *Pulliam v. Allen*, 466 U.S. 522, 536 (1984) (consistent with English common law, American courts have never adopted a rule of absolute judicial immunity to claims for injunctive relief), but if federal judges are free to willfully disregard the binding law of their jurisdiction, *stare decisis* doesn't seem to count for much.

[5] On information and belief, the constitutionality of this statute has never been adjudicated; Smith is currently challenging it. *Smith v. Thomas* No. 09-cv-1926-JDB (D.D.C. filed Oct. 6, 2009).

[6] At common law, by making an officeholder subject to removal for violating it, the condition of good behavior defined the powers of a given office. Coke listed three grounds for the forfeiture of good behavior tenure: abuse of office, nonuse of office, and the willful refusal to exercise an office. Saikrishna Prakash and Steve D. Smith, *How to Remove a Federal Judge*, 116 Yale L.J. 72, 90 (2006) (citing Coke's *Institutes*). Blackstone added that "the oppression and tyrannical partiality of judges, justices, and other magistrates, in the administration and under the colour of their office [could be prosecuted] either by impeachment in parliament, or by information in the court of king's bench." 4 Blackstone, *Commentaries* 140-41. As this provision was borrowed from the common law, English precedent is used to establish its contours. *See United States v. Wilson*, 32 U.S. 150, 160 (1833) (scope of pardon power determined by reference to English law, as the concept was taken from England).

4.  Speaking under oath in a judicial confirmation hearing, Defendant Judge Marcia Krieger declared that she agreed with statements of her colleagues that "in America, we pride ourselves on a Constitution which preserves the rights of individuals and protects them from the overreach of government," "that the rights afforded to each of us are personal rights," and "we cannot overlook the constitutional liberties that we all enjoy and that are the basis for our freedoms in this country," further interjecting that "[i]f we did not have civil liberties, there would be nothing to keep secure." Confirmations on Federal Appointments (S. Hrg. 107-592, Pt. 2): Hearings Before the S. Comm. on the Judiciary, 107th Cong. (2001) (unpaginated; DOCID: f:82503.wais) (statement of Judge Marcia S. Krieger, et al.).

5.  It is a logical impossibility for a right to exist without an effective remedy for its invasion, *Ashby v. White* [1703] 92 Eng.Rep. 126, 136, and as such, there must be some effective remedy under our Constitution and law for every invasion of our rights, *Marbury v. Madison*, 5 U.S. 137, 163 (1803), for "[t]o take away all remedy for the enforcement of a right is to take away the right itself." *Poindexter v. Greenhow*, 114 U.S. 270, 303 (1884); see, *Nelles v. Ontario*, 2 S.C.R. 170 (1989) (Canada) (same); 3 Blackstone, *Commentaries on the Laws of England* 86 (1765) (under English common law, "every possible injury that can be offered to a man's person or property is **certain** of meeting with redress"; emphasis added); International Covenant on Civil and Political Rights, 999 U.N.T.S. 171 (entered into force Mar. 23, 1976) (ratified by the United States Sept. 8, 1992) (evidence that the rule of law espoused in *Ashby* has achieved status of *jus cogens* law).

6.  Courts are obliged to abandon precedent where the "facts have so changed … as to have robbed the old rule of significant application or justification." *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 855 (1992).

7.  With respect to the rule of law in *Bradley v. Fisher, supra*, the premises of fact underlying what was once defensible public policy "have so far changed in the ensuing [time] as to render its central holding somehow irrelevant or unjustifiable in dealing with the issue it addressed." *Planned Parenthood*, 505 U.S. at 855.

8.  In *Smith v. Bender, supra*, the Defendants responsible for that decision have stretched the *Bradley* rule beyond all semblance of reason, not only finding judicial immunity for acts taken in a judicial capacity by a state judge with jurisdiction but also, by judges acting in open defiance of the Fourteenth Amendment and without colorable jurisdiction.[7]

9.  To the extent that other judges have facilitated their judicial colleagues' ability to achieve this patent violation of Smith's federal rights, they have become co-conspirators, and must accept joint and several liability for all acts taken throughout the course of the conspiracy. *See generally,*

---

[7] The bounds of common law sovereign immunity were established in Magna Carta, inasmuch as the King was not a person but an office, one to be administered for the public good. Yes, he was a sovereign and therefore, entitled to sovereign immunity, but if he wrongfully injured someone in maladministration of that office, the four barons were entitled to "distrain and distress us in all possible ways, namely, by seizing our castles, lands, possessions, and in any other way they can, until redress has been obtained as they deem fit." *Magna Carta* (1215). Professor (Justice) Story explains that the sovereign people composing the "State"

> ... may divide its sovereign powers among various functionaries, and each in the limited sense would be sovereign in respect to the powers, confided to each; and dependent in all other cases. Strictly speaking, in our republican forms of government, the absolute sovereignty of the nation is in the people of the nation; and the residuary sovereignty of each state, not granted to any of its public functionaries, is in the people of the state.

2 J. Story, *Commentaries On the Constitution of the United States* § 208 (1836).

To understand this point is to grasp the notion of sovereignty in a republic. The people are the real sovereign, whether it is here, in England, or Burkina Faso. The government is the agent of the people. The King of England or the Chief Justice of the United States Supreme Court have only the sovereignty we have given to them. They may not act outside the four corners of their agency, and enjoy no protection as a sovereign when they do. See, Federalist No. 78 (A. Hamilton) (re: limits of agency granted by the Constitution).

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 47, at 324 (5th ed. 1984).

10. On information and belief, the self-evident 'object' of this conspiracy engaged in by the Defendants is to subject the American people to "absolute Despotism" -- a sordid state of affairs, where they claim an absolute veto power over every piece of legislation our representatives enact and even the Constitution itself. Like Saddam Hussein before them, the Defendants now declare themselves to be above and beyond the law, able to hide behind an impenetrable cloak of judicial immunity fabricated from whole cloth, aided and abetted by rampant prosecutorial corruption.

11. The last act taken in furtherance of said conspiracy occurred in October of 2009 (as it is anticipated that further acts will be taken).

12. As "[t]he right to sue and defend in the courts is the alternative of force …[and] the right conservative of all other rights, … [which is] one of the highest and most essential privileges of citizenship," *Chambers v. Baltimore & Ohio R. Co.,* 207 U.S. 142, 148 (1907), to deprive a citizen of that right, as the Defendants have in this case, is to relegate him to the status of "property" and brand him with a badge of slavery. *See, Dred Scott v. Sandford*, 60 U.S. 393 (1857).

13. Various and sundry non-judicial acts have been taken in connection with this conspiracy, as well as certain omissions, including unlawful acts of intimidation -- taken both by judicial and non-judicial personnel -- which may not qualify for judicial immunity in any event.

14. As Smith has the right to be free from unlawful acts of intimidation and lives under real and immediate threat of retaliation for his exercise of constitutionally protected rights, Smith is also entitled to immediate injunctive and/or declaratory relief.

15-20. [Reserved.]

## JURISDICTION AND VENUE

21.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and

1346, as Plaintiff seeks both compensatory damages and injunctive and declaratory relief pursu-

ant to 28 U.S.C. §§ 2201-02.

22.   Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b), as a substantial

portion of the acts and/or omissions occurred within the District.

23.   In accordance with 42 U.S.C. § 1988, this Court is authorized to award Smith reasonable

costs and attorneys' fees, if any, incurred in the prosecution of this action.

## PARTIES

24.   Plaintiff Kenneth L. Smith is, and has been for all times pertinent to this action, both a

natural United States citizen and a resident of the State of Colorado.

25.   Defendants Christine M. Arguello,[8] Stephen H. Anderson, Bobby R. Baldock, James E.

Barrett, Robert E. Blackburn, Mary Beck Briscoe, William J. Holloway, Jr., Marcia S. Krieger,

Edward W. Nottingham, John C. Porfilio, Stephanie K. Seymour, and Deanell Reece Tacha are

or were, for all times pertinent to this action, duly-authorized agents of the United States of

America entrusted with the "judicial power" as created and defined by Article III of the United

States Constitution, within their respective jurisdictions, and no other.

26.   Defendant Edward W. Nottingham was, for all times pertinent to this proceeding, the

presiding judge in the matter of *Smith v. Mullarkey*, Case No. 00-cv-2225, filed in the United

States District Court for the District of Colorado (hereinafter, "the District of Colorado").

---

[8] Honorifics elided on grounds of brevity and clarity.

27.   Defendants Stephen H. Anderson, James E. Barrett, and Mary Beck Briscoe were, for all times pertinent to this proceeding, presiding judges in the matter of *Smith v. Mullarkey*, Case No. 02-1481, filed in the United States Court of Appeals for the Tenth Circuit (hereinafter, "the Tenth Circuit").

28.   Defendant Robert E. Blackburn was, for all times pertinent to this proceeding, the presiding judge in the matter of *Smith v. United States Court of Appeals for the Tenth Circuit*, Case No. 04-cv-1222, filed in the District of Colorado.[9]

29.   Defendants Bobby R. Baldock, William J. Holloway, Jr., and Stephanie K. Seymour were, for all times pertinent to this proceeding, presiding judges in the matter of *Smith v. United States Court of Appeals for the Tenth Circuit*, Case No. 04-1468, filed in the Tenth Circuit.

30.   Defendant Christine Arguello was, for all times pertinent to this proceeding, the presiding judge in the matter of *Smith v. Ebel*, No. 08-cv-251, filed in the District of Colorado.

31.   Defendant Marcia S. Krieger was, for all times pertinent to this proceeding, the presiding judge in the matter of *Smith v. Bender*, No. 07-cv-1921, filed in the District of Colorado.

32.   Defendants John C. Porfilio, Stephen H. Anderson, and Deanell Reece Tacha were, for all times pertinent to this proceeding, presiding over the appeal in the matter of *Smith v. Bender*, No. 09-cv-1003, filed in the United States Court of Appeals for the Tenth Circuit.

33.   Defendant Lloyd B. Clark and two companions, whose identities are not known to Plaintiff at this time, are and were, for all times pertinent to this proceeding, employees of the United States Marshal Service which, on information and belief, are employed in that agency's Denver office.

---

[9] Companion case elided here on grounds of brevity.

34.   On information and belief, Defendant Edward Zahren is the United States Marshal for the District of Colorado, responsible for the supervision of Defendant Clark, *et al.*

35.   On information and belief, Defendants Stephen J. Sorenson and Terry Fox [gender unknown] are and have been, for all times pertinent to this proceeding, authorized agents of the United States Department of Justice.

36.   On information and belief, Defendant Jeanette Swent is the Division Chief for the Civil Division of the United States Attorney for the District of Utah, and currently responsible for the supervision of Defendant Sorenson.

37.   On information and belief, Defendant David Gaouette is Acting United States Attorney for the District of Colorado, and currently responsible for supervision of Defendant Fox.

38.   Defendant Eric H. Holder, Jr. is United States Attorney General, and ultimately responsible for the supervision of all employees of the United States Department of Justice.

39.   The United States Department of Justice is an instrumentality of the United States Government, duly authorized to act as its agent, subject to the strictures imposed by the United States Constitution and applicable federal law, of which, the United States Marshal Service is merely a sub-agency.

40.   The Does are individuals who may have, from time to time, knowingly aided and abetted the unlawful and/or tortious acts alleged herein, but whose identities are unknown to Plaintiff at this time.

41.   On information and belief, at all times pertinent to this Complaint, the Defendants herein named were authorized to act as agents of the United States Government.

42.   The Defendant Judges acted outside the scope of their lawful authority as agents of the

United States of America as defined by Article III of the United States Constitution and as such, are sued here in their personal capacities only.

43.  On information and belief, all parties named as Defendants in their personal capacities are still living.

44-45.  [Reserved.]


## GENERAL ALLEGATIONS

46.  28 U.S.C. § 453 provides:

> Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, [judge's name,] do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as [judge's office] under the Constitution and laws of the United States. So help me God."

47.  On information and belief, Article III judges are justifiably counted among the most technically proficient jurists in the world and accordingly, can be presumed as thoroughly acquainted with rudimentary concepts of Anglo-American law like *res judicata*, collateral estoppel, and the *Rooker-Feldman* doctrine. *See, Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (public officials are presumed to know clearly established law within the scope of their authority).

48.  Every judge within the jurisdiction of the Tenth Circuit is charged with knowledge that he or she is 'bound' to follow not only the "published" precedent of the Circuit, *In re Smith*, 10 F.3d 723, 734 (10th Cir. 1993), but also, the reasoning used by previous courts en route to their decisions. *United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000).

49.  Every judge within the jurisdiction of the Tenth Circuit is charged with knowledge that it

is the United States Supreme Court's "prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U. S. 3, 20 (1997), subject to caveats concerning "precedent on precedent." *Planned Parenthood, supra.*

50.   Every judge within the jurisdiction of the Tenth Circuit is charged with knowledge that his or her conduct is restrained by federal criminal law including, but not limited to, Sections 2 (liability as principal), 3 (accessory after the fact), 4 (misprision), 241 (conspiracy against rights), 242 (federal rights violations), 1001 (false statements), and 1351-60 (honest services mail fraud) of Title 18 of the United States Code.

51.   Every judge within the jurisdiction of the Tenth Circuit is charged with knowledge that Article III of the Constitution grants only the judicial power, which does not extend to the power to write *ad hoc* law applying to one and only one set of litigants on an *ex post facto* basis.

## A.   Regarding Defendant Krieger

52.   On or about September 12, 2007, Smith filed an action in the United States District Court for the District of Colorado, styled *Smith v. Bender*, No. 07-cv-1924.

53.   *Smith v. Bender* alleged, in pertinent part, that the putative "disposition" of his tort claims by the defendants in that matter was void as a matter of Colorado law, and violated Smith's Fourteenth Amendment right to have his grievances heard by a fair and independent tribunal. *Tumey, supra.*

54.   Smith advised Defendant Krieger of the basis upon which he was proceeding in the first four pages of his Complaint and numerous documents filed with her court in *Smith v. Bender*.

55.   In the course of proceedings in *Smith v. Bender*, Smith filed a motion asking that court to take judicial notice of acts by the courts of Colorado and statutory provisions demonstrating that

the decree Smith took issue with was void as a matter of Colorado law.

56. In the course of proceedings in *Smith v. Bender*, Smith informed Defendant Krieger that claims in the underlying lawsuit (*Smith v. Mullarkey*, No. 02-cv-127 (Denver Dist. Ct.)) included facial challenges grounded in federal law to the constitutionality of Colorado's bar admission and sought declaratory and injunctive relief.

57. Defendant Krieger summarily dismissed Smith's lawsuit on the putative grounds that the *Rooker-Feldman* doctrine deprived her court of jurisdiction.

58. Defendant Krieger is legally charged with knowledge that, under published Tenth Circuit precedent, an "independent claim" cannot be extinguished by operation of the *Rooker-Feldman* doctrine:

> The *Rooker-Feldman* doctrine asks: **is the federal plaintiff seeking to set aside a state judgment, or does he present <u>some independent claim</u>,** albeit one that denies a conclusion that a state court has reached in a case to which he is a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction.

*Kenmen Eng'g v. City of Union,* 314 F.3d 468, 479-80 (10th Cir. 2002) (emphasis added).

59. Defendant Krieger is legally charged with knowledge that, under published United States Supreme Court precedent, forward-looking facial challenges to the operation of a statute are outside the ambit of the *Rooker-Feldman* doctrine entirely. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482-83 (1983).

60. Defendant Krieger is legally charged with the knowledge that when a state judge decides a case in which she is a defendant in tort, it violates other litigants' Fourteenth Amendment right to procedural due process and specifically, to have grievances heard by a fair and independent tribunal. *E.g., In re Murchison*, 349 U.S. 133 (1955); *Tumey, supra.*

61. Defendant Krieger is legally charged with knowledge that a violation of procedural due

process rights is a stand-alone tort, which may be vindicated even in the absence of a showing of damages. *Carey v. Piphus*, 435 U.S. 247 (1978).

62.   Defendant Krieger is legally charged with knowledge that the Colorado Supreme Court justices' act in deciding an appeal in a case in which they were defendants in tort was tortious on its own, and that the right to relief under *Carey* would not depend on whether Smith would have prevailed in that matter. *Carey, supra.*

63.   As Smith presented an independent claim under the ambit of *Kenmen, supra*, Defendant Krieger had no right under Article III to refuse to hear it and indeed, failure to hear it constitutes "treason to the Constitution." *Cohens v. Virginia*, 16 U.S. 264, 404 (1821).

64.   Smith filed a motion for reconsideration in *Smith v. Bender*, pointing out the self-evident errors in her decision in that case.

65.   Defendant Krieger summarily denied Smith's motion for reconsideration.

66.   On information and belief, Defendant Krieger knowingly and intentionally made material false representations regarding the judicially noticeable facts of *Smith v. Bender*, for the purpose of bestowing an unjust benefit upon friends and/or judicial colleagues.

67.   Prior to and during her involvement with *Smith v. Bender*, Defendant Krieger presided over a matter styled *Smith v. Ebel*, No. 08-cv-00251, filed by Smith in the District of Colorado, alleging that litigants had a right to require judges of the District and Circuit to follow the binding precedent of their jurisdictions.

68.   Roughly one week prior to her acceptance of personal jurisdiction over *Smith v. Bender*, Defendant Krieger recused herself *sua sponte* in *In re Hook*, No. 07-cv-00631-MSK (D.Colo. Jan. 25, 2008), stating in pertinent part:

> THIS MATTER is before the Court sua sponte.  I am an active member of the United States District Court for the District of Colorado, which is named as the Defendant in this civil action.  **Accordingly, my impartiality might reasonably be questioned,** and the appearance of impropriety may very well exists, warranting the sua sponte recusal pursuant to 28 U.S.C. § 455(a) and Canon 3C(1) of the Code of conduct for United States Judges, 175 F.R.D. 364, 368 (1998).

*In re Hook*, No. 07-cv-00631-MSK, 2008.DCO.0000444, ¶ 8 (D.Colo. Jan. 25, 2008) (Versuslaw; emphasis added; footnote elided).

69.  Acceptance of personal jurisdiction over both *Smith v. Bender* and *Smith v. Ebel* would have created and did create the same conditions precipitating her recusal in *In re Hook*.

70.  On information and belief, including published information, Defendant Krieger has had personal relationships of long standing with two of the defendants in *Smith v. Bender*.

71.  Defendant Krieger recused herself *sua sponte* in *Maynard v. Colorado Supreme Ct. Ofc. of Atty. Regulation Counsel* on the ground that "one of the Plaintiffs is a childhood friend," *Id.,* No. 09-cv-02052-MSK, 2009.DCO.0006011, ¶ 8 (D.Colo. Oct. 15, 2009).

72.  On information and belief, Defendant Krieger and her "childhood friend" were never that close when they were children (they lived in the same neighborhood for three years), and did not have an ongoing personal relationship of any significance at the time of her recusal.

73-80.  [Reserved.]

## B.   Regarding Defendants Porfilio, Anderson, and Tacha

### 1.   Federal Rights Violations

81.  On or about December 31, 2008, Smith appealed the decision in *Smith v. Bender* to the United States Court of Appeal for the Tenth Circuit, which was formally docketed on January 6, 2009.

82.   On or about May 1, 2009, Smith filed an action in the District of Colorado styled *United States ex rel. Smith v. Anderson*, No. 09-cv-1018, naming Defendants Stephen H. Anderson and Deanell Reece Tacha as defendants.

83.   In *United States ex rel. Smith v. Anderson, Smith* sought to have Defendants Anderson and Tacha removed from office on the grounds that they had violated their good behavior tenure, and criminally prosecuted for facial violations of the United States Code.

84.   On information and belief, at some date prior to September 11, 2009, Defendants Anderson and Tacha learned of the existence of *United States ex rel Smith v. Anderson*.

85.   On September 11, 2009, Defendants John C. Porfilio, Anderson, and Tacha rendered a decision in *Smith v. Bender*, despite the self-evident conflict of interest faced by Anderson and Tacha.

86.   The opinion in *Smith v. Bender* was not selected for publication and accordingly, does not affect the official precedent of the Tenth Circuit.

87.   Smith received no advance notice of the composition of the panel deciding *Smith v. Bender* and as such, had no opportunity to object.

88.   The opinion in *Smith v. Bender* is in irreconcilable conflict with United States Supreme Court decisions in *Caperton v. A.T. Massey Coal Co.*, No. 08-22 (U.S. Jun. 9, 2009), *In re Murchison*, 349 U.S. 133 (1955), and *Tumey v. Ohio*, 273 U.S. at 523, insofar as it authorizes a judge to decide an appeal in a case in which s/he is a defendant in tort, the plaintiff is seeking millions in compensatory and punitive damages, sixteen non-conflicted judges are available and authorized by law to decide it, and the appeal is required by statute to be heard by another court. *See, Smith v. Mullarkey*, 121 P.3d 890 (Colo. 2005) (per curiam).

89. The opinion in *Smith v. Bender*, listed as having been written by Defendant Porfilio, contains the following passage:

> In order to fully address the issues raised by Mr. Smith in this appeal, however, we also point out the following fallacies in his arguments. First, to the extent Mr. Smith is seeking to relitigate his federal-law challenges to the Colorado Supreme Court's denial of his admission to the bar of the State of Colorado, those challenges are barred by the doctrines of res judicata and collateral estoppel by virtue of: (1) this court's final decision in Mr. Smith's prior appeal to this court, *see Smith v. Mullarkey*, 67 F. App'x 535, 538 (10th Cir. 2003) (applying *Rooker-Feldman* doctrine and holding that district court correctly determined that it did not have subject matter jurisdiction over Mr. Smith's federal-law claims challenging the denial of his admission to the Colorado bar); and (2) the fact that the United States Supreme Court denied Mr. Smith's petition for a writ of mandamus and/or prohibition pertaining to that final decision, *see In re Smith*, 540 U.S. 1103 (2004).

*Smith v. Bender*, No. 09-1003 (10th Cir. Sept. 11, 2009), slip op. at 5-6.

90. On information and belief, Defendant Porfilio has attained senior status, having ascended to the federal bench at some point during 1985.

91. On information and belief, any Article III judge who has attained senior status would be conversant enough with the *Rooker-Feldman* doctrine to know that it cannot be invoked to defeat claims for prospective relief.

92. On information and belief, any Article III judge who has attained senior status would be familiar enough with the workings of the Supreme Court would know that a denial of certiorari is not a review on the merits. *Brown v. Allen*, 344 U.S. 443, 489-97 (1953) (Opinion of Frankfurter, J., stating the position of a majority of the Court on this point).

93. On information and belief, any Article III judge who has attained senior status would be conversant enough with the doctrine of res judicata would know that it only applies to a decision of a competent court on the merits. *Nwosun v. General Mills Rests., Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997) (stating four preconditions for res judicata).

94.   On information and belief, any Article III judge who has attained senior status would be conversant enough with the doctrine of collateral estoppel knows that it can only apply against a party who had had a full and fair opportunity to litigate the issue. *Dodge v. Cotter Corp.,* 203 F.3d 1190 (10th Cir. 2000).

95.   On information and belief, Defendant Porfilio is personally conversant with all of these rudimentary concepts of law, having demonstrated same in published opinions which he claims authorship of. *Id.; Mann v. Boatright,* 477 F.3d 1140 (10th Cir. 2007); *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 2006.C10.107, ¶ 27 (10th Cir. 2006) (Versuslaw.). ("It is fundamental . . . that a dismissal for lack of jurisdiction is not an adjudication of the merits.").

96.   On information and belief, Defendant Tacha knew or had reason to know that tort claims based on a *Carey* theory arising a judge's act of deciding an appeal in which she was a defendant was an independent claim for purposes of *Rooker-Feldman,* having authored the published decision drawing that distinction. *Kenmen, supra.*

97.   On information and belief, Defendant Anderson knew or had reason to know that Smith was seeking forward-looking declaratory relief in *Smith v. Mullarkey,* 121 P.3d 890 (Colo. 2005), having admitted in the decision he authored in *Smith v. Mullarkey,* 67 F.Appx. 535 (10th Cir. Jun. 11, 2003), that

> [Smith] filed a complaint in federal district court setting forth twenty claims for relief for alleged violations of federal law and of plaintiff's constitutional rights. **Plaintiff sought declarations that the Colorado bar admission process and certain admissions rules were unconstitutional...**

*Smith v. Mullarkey,* 67 F.Appx. 535, slip op. at 4 (emphasis added).

98.   On information and belief, Defendants Porfilio, Anderson, and Tacha knew or had reason to know that it was logically impossible to "relitigate" an issue which has not and could not have

been litigated prior to its being brought before a federal court.

99.   On information and belief, Defendants Porfilio, Anderson and Tacha deliberately misrepresented the judicially noticeable facts of *Smith v. Bender*, in furtherance of the conspiracy.

   2.   False Statements, Unlawful Retaliation, and Intimidation

100.   Section 241 of Title 18 of the United States Code provides, in pertinent part:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State … in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same … [t]hey shall be fined under this title or imprisoned not more than ten years, or both.

101.   Section 242 of Title 18 of the United States Code provides, in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State … to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States … shall be fined under this title or imprisoned not more than one year, or both

102.   Section 1001(a) of Title 18 of the United States Code provides, in pertinent part:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
> (1)   falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)   makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)   makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years.

103.   The First Amendment governs all speech in documents filed with any court intended to apprise that court of the governing law and pertinent facts in the case before it, and protects the citizen against retaliation by public officials. *See generally, Bridges v. California*, 314 U.S. 252 (1941) (clear and present danger test applied); *Perry v. Sindermann, supra* (indirect restraints on

speech).

104.   It is not uncommon for judges to engage in unbridled and even brutal criticism of their

peers, as evidenced by the following representative example:

> I have read, and re-read, and re-re-read, the majority's opinion. **I don't know what was in the Kool-Aid they were drinking,** but I believe that the opinion is one of the most factually misleading and legally pernicious cases to be produced by this Court . . . If there is any light to be found in the majority's opinion, it is in the fact that it did not actually address the parties' legal arguments. I suspect it was because the majority opinion could not do so without either issuing an opinion unfavorable to the hospital, or issuing an opinion that was more factually and legally wrong.

*Riggs v. West Virginia University Hospitals, Inc.*, No. 33335 (W.Va. 2007) (Starcher, J., dissent-

ing), slip op. (issued Dec. 26, 2007) at 1, 18 (emphasis added).

105.   In his opening brief in *Smith v. Bender*, Smith apprised Defendants Porfilio, Anderson,

and Tacha of the following judicially noticeable facts:

> Pursuant to motion by Smith that it do so under Fed. R. Evid. 201(d), the court below took judicial notice of the following salient facts:

>> 26.   On or about May 14, 2004, Smith filed a timely appeal of the [order dismissing his lawsuit] in the Colorado Court of Appeals.

>> 27.   The issue presented to the Colorado Court of Appeals in that appeal is as follows:

>>> Whether the trial court erred in declining jurisdiction over damage claims brought pursuant to 42 U.S.C. § 1983, facial constitutional challenges to a statutory regulation promulgated by an instrumentality of the state, and/or claims brought pursuant to article II, section 6 of the Colorado constitution because the Colorado Supreme Court "has exclusive jurisdiction over matters involving the licensing of persons to practice law."

>> 28.   On or about August 16, 2005, the Colorado Court of Appeals issued an order referring the jurisdictional issue to the Colorado Supreme Court, ostensibly pursuant to § 13-4-110(1)(a), C.R.S. 2004, which states:

>>> When a party in interest alleges, or the court is of the opinion, that a case before the court of appeals is not properly within the jurisdiction of the court of appeals, the court of appeals shall refer the case to the supreme court. The supreme court

shall decide the question of jurisdiction jurisdiction in a summary manner, and its determination shall be conclusive.

29. On or about August 18, 2005, the Colorado Supreme Court accepted jurisdiction over the jurisdictional question, pursuant to the ostensible authority of § 13-4-110(1)(a). …

33. On or about October 17, 2005, the Justices issued a per curiam opinion affirming the District Court's decision denying jurisdiction over Smith's federal claims, wherein they admitted:

> The court is the defendant in this action. By operation of the Rule of Necessity, Canon 3 F., if all or a majority of the court has a conflict, the court must none the-less hear the case.

*Smith v. Mullarkey, supra., slip op.* at 2 & fn. 1.

*Aplt. Opening Brief, Smith v. Bender,* No. 09-1003 at 34-35 *(quoting Smith v. Bender,* Complaint [Dkt. #1], at 6-7).

105. In the aforementioned brief, Smith further observed that as of August 16, 2005,

> the Colorado Supreme Court had jurisdiction to decide whether it or the Colorado Court of Appeals had jurisdiction over Smith's appeal. But it did not enjoy unfettered discre-tion: It could not "adopt a rule which changes jurisdiction of a court contrary to a provi-sion of a statute," *Bill Dreiling, supra.* Section 13-2-102(1), C.R.S. 2004, stated in perti-nent part that "[a]ny provision of law to the contrary notwithstanding, the court of appeals shall have initial jurisdiction over appeals from final judgments of the district court,"

further apprising the Court that the statute lists numerous exceptions irrelevant to the case before

it: "[A]ppeals (a) where a statute had been declared unconstitutional, (b) concerning actions of

the state public utilities commission, (c) involving water rights, (d) or a writ of habeas corpus, (e)

originating in county court, (f) involving the death penalty, or (g) any summary proceeding

involving election law.  C.R.S. § 13-1-102(1)(a)-(h)."  Id. at 35 & fn. 3.

106. In the aforementioned brief, Smith further apprised Defendants Porfilio, Anderson, and

Tacha that

> The Colorado legislature also took pains to ensure that a judge could not abuse his high

office for personal benefit. A judge "who knows of circumstances which shall disqualify him in a case shall, on his own motion, disqualify himself." C.R.S. § 16-6-201(2). And once a judge is obligated to recuse, s/he "immediately loses all jurisdiction in the matter except to [transfer it to another judge]," *People ex rel. Burke v. District Court*, 60 Colo. 1, 8, 152 P. 149 (Colo. 1915) (quotation omitted). Thus, if a judge proceeds in open defiance of his or her obligation to recuse, s/he forfeits all jurisdiction and with it, the considerable benefits of judicial immunity. *Bradley v. Fisher, supra.*

Id. at 36.

107.  In the aforementioned brief, Smith apprised Defendants Porfilio, Anderson, and Tacha of

the fact that the defendants in *Smith v. Bender* violated his Fourteenth Amendment right to have

his grievances heard by a fair and independent tribunal, and to equal protection of the law:

As the Justices were defendants in tort in the case, they were disqualified from personally deciding the jurisdictional question by virtue of the Fourteenth Amendment. *Tumey*, 273 U.S. at 523.  The only exception to that rule is the "Rule of Necessity," empowering a judge to hear a case when "'failure to do so would result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated.'" *United States v. Will*, 449 U.S. 200, 214 (1980) (quotation omitted).  The Court outlined its well-known contours:

The true rule unquestionably is that wherever it becomes necessary for a judge to sit even where he has an interest -- where no provision is made for calling another in, or where no one else can take his place -- it is his duty to hear and decide, however disagreeable it may be.

*Will*, 449 U.S. at 214 (quotation omitted).

As the only time the Rule applies is where no qualified judge can hear the case, the judges of the Colorado Court of Appeals are authorized to "serve in **any state court with full authority** as provided by law," C.R.S. § 13-4-101 (emphasis supplied), and all sixteen appellate judges of that body were facially independent with respect to the matter, the Justices could not lawfully invoke the Rule to secure jurisdiction over the jurisdictional question.

Id. at 36-37 (emphasis in original).

108.  In the aforementioned brief, Smith further apprised Defendants Porfilio, Anderson, and

Tacha that the Rule of Necessity could not be invoked by the Defendants, as

[i]t is standard practice in states with statutory or constitutional provisions analogous to C.R.S. § 13-4-101 for conflicted supreme court justices to recuse. *See e.g., Mosk v. Superior Court of Los Angeles*, 601 P.2d 1030 (Calif. 1979) (also collecting cases from North Dakota, Washington, and Wyoming; *Lorenz v. N. H. Admin. Office of the Courts*, 858 A.2d 546 (N.H. 2004), *Sullivan v. McDonald*, 913 A.2d 403 (Conn. 2007). In every case in every common law jurisdiction confronting it, the Rule was only applicable where no substitute judge could be found. *See e.g., Dickason v. Edwards* [1910] 10 CLR 23 (Australia); *Reference re Remuneration of Judges of the Provincial Court* (P.E.I.) [1998] 1 S.C.R. (Canada), *Ruben v. Petewon*, 14 FSM Intrm. 146 (Chk. S. Ct. App. 2006) (Micronesia). **There is no contrary authority.** It is strictly applied, often with severe personal consequences for offending judges. *See e.g., West Virginia v. Dietrick*, 444 S.E.2d 47 (W.Va. 1994) (husband got warrant from magistrate wife, who failed to contact circuit judge); *Huffman v. Judicial Discipline and Disability Cmte.*, 42 S.W.3d 386 (Ark. 2001) (judge holding stock in company seeking a TRO was disciplined; the other judge was "ill").

Id. at 37-38 (emphasis in original).

109.   In the aforementioned brief, Smith apprised Defendants Porfilio, Anderson, and Tacha

that, to the best of Smith's knowledge,

> ...**no judge in any civilized nation has ever** been permitted to do what the Defendant Justices are attempting to get away with here. And, just in case the reason for this isn't obvious on its face, the Colorado Supreme Court explains why:
>
>> The first ideal in the administration of justice is that the judge must be free from bias and partiality. Men are so agreed on this principle that any departure therefrom shocks their sense of justice. ... We are equally certain that when ... a judge is prejudiced or otherwise incompetent to hear or try a cause, but nevertheless, proceeds in that regard, the issues are not likely to be determined and the rights of the parties properly protected and enforced in a court over which he presides.
>
> *People ex rel. Burke v. District Court*, 60 Colo. at 4.

Id. at 38-39 (emphasis in original).

109.   In their Answer Briefs, the Defendants did not make any attempt to dispute this reading

of the Rule of Necessity or its implications.

110.   Defendants Porfilio, Anderson, and Tacha were charged with the knowledge that Defen-

dant Krieger had disclaimed jurisdiction over Smith's claims on account of the Rooker-Feldman

doctrine.

111.   On information and belief, in their unpublished opinion, Defendants Porfilio, Anderson

and Tacha knowingly and willfully elided mention of what Smith alleged was the central issue of

the case: whether an opinion issued by a judge without lawful jurisdiction to issue it constitutes a

"final state court judgment" for purposes of the *Rooker-Feldman* doctrine.

112.   On information and belief, Defendants Porfilio, Anderson, and Tacha knowingly and

willfully acknowledged the fact that that the district court judge in the case before them "deter-

mined that the *Rooker-Feldman* doctrine deprived the district court of subject matter jurisdiction

over Mr. Smith's claims against the named Justices of the Colorado Supreme Court." *Smith v.

Bender*, No. 09-1003 (10th Cir. Sept. 11, 2009) (unpublished), slip op. at 4.

113.   On information and belief, Defendants Porfilio, Anderson, and Tacha knowingly and

willfully issued the following statement in their published opinion:

> Fourth, in the section of his opening brief entitled "Summary Of The Argument," Mr.
> Smith claims that, in *Smith v. Mullarkey*, the Justices of the Colorado Supreme Court
> "violated his well-established federal right to have [his] federal civil rights claims and/or
> facial challenges to a [state] statute grounded in federal law decided in a state court of
> general jurisdiction." Aplt. Opening Br. At 15 (citing *Claflin v. Houseman*, 93 U.S. 130
> (1876)). Mr. Smith further argues that "[t]his constitutes an 'independent claim,' which
> has always been outside the ambit of the Rooker-Feldman doctrine." Id. (citing *Kenmen
> Eng'g v. City of Union*, 314 F.3d 468, 479-80 (10th Cir. 2002)). This is the only reference
> to this claim in Mr. Smith's opening brief, however, as it is omitted from the preceding
> sections in the brief, and Mr. Smith likewise did not address it in the "Argument," "Con-
> clusion," or "Statement Regarding Oral Argument" sections of the brief. Id. at 17-67.
>
> Despite his pro se status, we easily conclude that Mr. Smith has failed to adequately brief
> this claim, and we therefore decline to address it. *See Adler v. Wal-Mart Stores, Inc.*, 144
> F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are
> waived[.]"). **Further, while we still may possess discretion to consider this claim, we
> refuse to exercise such discretion in favor of Mr. Smith given, as set forth below, the
> blatant disrespect for the judicial process that he has demonstrated in this appeal.**
> *Cf. Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840, 841 (10th Cir. 2005)
> (refusing "to delve for substance in a pro se pleading" where the plaintiff's appellate

briefs were written in a "scurrilous tone" and did "little more than attempt to impugn (without basis) the integrity of the district judge").

*Smith v. Bender*, No. 09-1003 (10th Cir. Sept. 11, 2009) (unpublished) (emphasis added).

114. Defendants Porfilio, Anderson, and Tacha are charged with the knowledge that, as a matter of law, Smith could not even argue that point unless the Panel overturned the decision below, as long as the decision rendered by the Colorado Supreme Court in *Smith v. Mullarkey*, 121 P.3d 890 (Colo. 2005) constituted a "valid state court judgment" for purposes of the *Rooker-Feldman* doctrine.

115. On information and belief, Defendants Porfilio, Anderson, and Tacha are charged with the knowledge that the issue in question was adequately briefed, as in a venue where brevity is next to godliness, Smith was not obliged to say anything more than this (as all salient facts were laid out):

> [I]n tortiously extinguishing his valid federal civil rights claims, the Justices violated his well-established federal right to have federal civil rights claims and/or facial challenges to a statute grounded in federal law decided in a state court of general jurisdiction. *Claflin v. Houseman*, 93 U.S. 130 (1876). This constitutes an "independent claim," which has always been outside the ambit of the Rooker-Feldman doctrine. *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 479-80 (10th Cir. 2002). More importantly, as the Justices acted without even the appearance of lawful jurisdiction, they are not entitled to judicial immunity. *Bradley v. Fisher*, 80 U.S. 335, 352-53 (1871) (where a judge lacks jurisdiction to rule, "no excuse is permissible."). Again, the decision below is plain error.

Aplt. Opening Br., *Smith v. Bender, supra* at 15; *see Rios v. Ziglar*, 398 F.3d 1201, 1206 n.3 (10th Cir. 2005) (citations omitted) (as long as a party makes a reasoned argument supported with legal authority, an issue is sufficiently briefed).

116. In the aforementioned brief, Smith alleged with judicially noticeable record support that the justices of the Colorado Supreme Court had, on the face of it, committed an act of honest services mail fraud, observing in pertinent part that the elements of honest services mail fraud:

as defined in 18 U.S.C. §§ 1341 and 1346 are (1) a scheme to defraud -- which includes depriving another of "the intangible right of honest services," (2) an intent to defraud, and (3) use of the mails to execute the scheme.  In taking jurisdiction over the jurisdictional question, the Defendant Justices not only deprived Smith of *their* honest services, but those of the learned members of the Colorado Court of Appeals.  With respect to intent, the *Welch* Court wrote:

> Because direct proof of fraudulent intent often is unavailable, courts have long permitted fact finders to rely on a variety of circumstantial evidence, including evidence of actual or contemplated harm, to infer such intent. . . . Intent to defraud may be inferred from the defendant's misrepresentations, knowledge of a false statement as well as whether the defendant profited or converted money to his own use.

*United States v. Welch*, 327 F.3d at 1105 (quotation omitted).

As getting rid of a lawsuit with damages that could easily measure into the tens of millions of dollars falls rather safely within the ambit of "profit," a court would have to strain to not find criminal intent.  And finally, as every judge can attest, an order usually finds its way into the United States mail.  As all of the legally salient facts were judicially noticed by the court below, an Assistant United States Attorney would have to be **spectacularly** incompetent to fail to successfully prosecute.

Id. at 46 (emphasis in original).

117.  In the aforementioned brief, Smith apprised Defendants Porfilio, Anderson, and Tacha of the fact that, on the face of it, in aiding and abetting the act of honest services mail fraud alleged, Defendant Krieger had violated 18 U.S.C. § 3 (accessory after the fact), § 242 (federal rights violations), and §§ 1351-60 (honest services mail fraud).

118.  Section 4 of Title 18 of the United States Code provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

119.  Smith was under a statutory duty to apprise Defendants Porfilio, Anderson, and Tacha of the facially felonious acts of Defendant Krieger pursuant to 18 U.S.C. § 4.

120. On information and belief, Defendants Porfilio, Anderson, and Tacha knowingly and willfully threatened Smith for exercising his statutory duty under to apprise them of "a felony cognizable by a court of the United States," Id., stating as follows: "We admonish and warn Mr. Smith that if he files future appeals in this court containing similar **unsupported claims**, allegations, or personal attacks, we will not hesitate to impose hefty sanctions and filing restrictions in order to curb his abusive and disrespectful litigation practices." *Smith v. Bender, supra, slip op.* at 10 (emphasis added).

121. Defendants Porfilio, Anderson and Tacha were charged with the knowledge that Smith's assertions of criminal misconduct by the justices of the Colorado Supreme Court and Defendant Krieger were supported by an array of judicially noticeable facts.

122. By concealing their knowledge of the basis upon which Smith alleged that the justices of the Colorado Supreme Court had committed felonious acts, Defendants Porfilio, Anderson, and Tacha knowingly and willfully "comfort[ed] or assist[ed the justices of the Colorado Supreme Court and Defendant Krieger] in order to hinder or prevent [their] apprehension, trial or punishment," 18 U.S.C. § 3, making false statements (18 U.S.C. § 1001) in furtherance of the conspiracy alleged.

123. Defendants Porfilio, Anderson, and Tacha are charged with knowledge that 18 U.S.C. § 401 states, in pertinent part, that

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> > (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice.

124. As Defendants Porfilio, Anderson, and Tacha do not have lawful authority to vindicate

even unjustifiable criticisms of other courts, the admonition ("We admonish and warn Mr. Smith that if he files future appeals in this court containing similar unsupported claims, allegations, or personal attacks, we will not hesitate to impose hefty sanctions and filing restrictions in order to curb his abusive and disrespectful litigation practices") in *Smith v. Bender, supra, slip op.* at 10, constitutes an illegal threat.

125-130.  [Reserved.]

## C.   Regarding Defendants Nottingham, Anderson, Briscoe, and Barrett

131.  On or about November 10, 2000, Smith filed a complaint in the District of Colorado, styled *Smith v. Mullarkey*, Case No. 00-N-1225.

132.  In *Smith v. Mullarkey*, Case No. 00-N-1225, Smith alleged violations of federal rights committed by persons acting under color of state law pursuant to 42 U.S.C. §§ 1983-86, and advanced an array of facial challenges to the constitutionality of Colo. R. Civ. P. 201.

133.  In *Smith v. Mullarkey*, Case No. 00-N-1225, Smith proceeded *in propria persona*.

134.  In *Smith v. Mullarkey*, Case No. 00-N-1225, Smith presented at least one claim grounded in federal law.

135.  In *Smith v. Mullarkey*, Case No. 00-N-1225 Smith alleged with record support that as a bar applicant, he was directly affected by the allegedly unconstitutional provisions of Colo. R. Civ. P. 201.

136.  On or about December 17, 2001, then-Judge Nottingham dismissed Smith's complaint on the grounds of a lack of subject-matter jurisdiction.

137.  On information and belief, then-Judge Nottingham is charged with the knowledge that lower federal courts have subject-matter jurisdiction to hear facial challenges by current and

future bar applicants to state bar admission statutes. *Feldman, supra*; *Roe v. Ogden,* 253 F.3d 1225 (10th Cir. 2001).

138.   On or about December 28, 2001, Smith filed a Motion to Amend Judgment, with header notes including "Plaintiff's Facial Challenges to the Colorado Bar Admission Statute Must Survive a Motion to Dismiss" and "Plaintiff Has Standing To Sue For Declaratory Relief," Mot. to Amend J. at 5 (emphasis in original).

139.   On or about September 30, 2002 (over nine months later!) in his Order Concerning Post-Judgment Motions, then-Judge Nottingham wrote, "I have reviewed the motion and the response and am of the view that the motion provides no basis which would persuade me to reconsider the bench ruling ordering that the clerk enter judgment dismissing this case."

140.   Smith filed a timely appeal of then-Judge Nottingham's decision.

141.   Smith's appeal -- styled *Smith v. Mullarkey*, No. 02-1481 -- was assigned to Defendants Anderson, Barrett, and Briscoe.

142.   Smith's request for oral argument in the matter was denied.

143.   In the Table of Contents in his Opening Brief, Smith stated the following:

> II. SMITH'S CLAIMS SEEKING REDRESS FOR PROCEDURAL DUE PROCESS VIOLATIONS AND FACIAL CHALLENGES TO COLORADO'S BAR ADMISSION STATUTE ARE OUTSIDE THE AMBIT OF THE ROOKER-FELDMAN DOCTRINE.

Opening Brief, *Smith v. Mullarkey*, No. 02-1481 (10th Cir. filed Nov. 7, 2002), Table of Contents.

144.   In his Statement of the Case in his Opening Brief, Smith stated, in pertinent part:

> **This action also asserts facial constitutional challenges to Rule 201** of the Colorado Rules of Civil Procedure, alleging that those bar rules are unconstitutional on their face in violation of the First and Fourteenth Amendments. This action seeks compensatory and punitive damages arising out of the deprivation of Smith's due process rights during the Colorado bar admission procedure, **and declaratory relief adjudging these bar rules facially unconstitutional, further enjoining their future enforcement.**

Id. at 2 (emphasis added).

145.   In the body of his Opening Brief, Smith quoted directly from *Feldman*: "[t]o the extent that [plaintiffs] Hickey and Feldman mounted a general challenge to the constitutionality of [the District of Columbia's bar admission statute], however, the District Court did have subject-matter jurisdiction over their complaints." Id. at 15 (quoting *Feldman*, 460 U.S. at 482-83).

146.   In their opinion denying Smith's appeal, Defendants Anderson, Barrett and Briscoe made the following admission:

> ...[Smith] filed a complaint in federal district court setting forth twenty claims for relief for alleged violations of federal law and of plaintiff's constitutional rights. Plaintiff sought declarations that the Colorado bar admission process and certain admissions rules were unconstitutional...

*Smith v. Mullarkey*, 67 F.App'x. 535, slip op. at 4 (10th Cir. Jun. 11, 2003) (emphasis added).

147.   Defendants Anderson, Barrett, and Briscoe affirmed the decision to dismiss Smith's complaint, thus extinguishing his facial challenges to Colorado's bar admission statute, due to an alleged lack of subject-matter jurisdiction.

148.   In *Feldman, supra*, the United States Supreme Court expressly held that federal district courts have subject-matter jurisdiction over claims seeking forward-looking declaratory relief grounded in federal law.

149.   Defendants Anderson, Barrett, and Briscoe are charged with the knowledge that proper application of Feldman to *Smith v. Mullarkey* takes on the form of a simple syllogism:

> If condition X (a bar applicant[10] challenges the facial constitutionality of a bar admission rule) is true, then Y (a federal district court must hear his claim, by virtue of Feldman).

---

[10] The class of persons with standing includes those who may apply for the bar in the foreseeable future (e.g., law students). *Roe v. Ogden*, 253 F.3d 1225 (10th Cir. 2001).

Condition X is true (a fact the Tenth Circuit openly admitted; see Paragraph 33, supra). Therefore, Y (a federal district court must hear that claim).

150. The Tenth Circuit decision in *Smith v. Mullarkey*, 67 F. App'x. 535, was designated as "not selected for publication," thereby depriving it of any precedential effect.

151. Smith filed a motion for rehearing, asking Defendants Anderson, Barnett, and Briscoe to reconsider their obviously wrong decision.

152. Smith's motion for rehearing was summarily denied.

153. Defendants Anderson, Barnett, and Briscoe are charged with the knowledge that they were writing *ad hoc, ex post facto* law applicable to Smith and only Smith.

154-60. [Reserved.]

**D. Regarding Defendants Blackburn, Baldock, Holloway, and Seymour**

161. On or about June 14, 2004, Smith filed two complaints in the District of Colorado, styled *Smith v. United States Court of Appeals, for the Tenth Circuit*, Case No. 04-N-1222, and *Smith v. Mullarkey*, Case No. 04-N-1223 (hereinafter, "the Non-Publication Cases").

162. Said cases were transferred to Defendant Blackburn's court, and redesignated Nos. 04-RB-1222 (OES) and 04-RB-1223 (OES).

163. In the Non-Publication Cases, Smith challenged the constitutionality of the issuance of so-called "unpublished" opinions (i.o.w., opinions without precedential value).

164. In Case No. 04-RB-1222 (OES), Smith further challenged the legality of the common law rule of absolute judicial immunity, on the grounds that (1) it had been eradicated by treaty, and (2) it was no longer part and parcel of the common law.

165. In the Non-Publication Cases, Smith proceeded *in propria persona*.

166.   In the Non-Publication Cases, Smith presented at least one claim grounded in federal law.

167.   At least one appellate court had found the practice of issuing unpublished opinions to be unconstitutional. *Anastasoff v. United States*, 223 F.3d 898, 904 (8th Cir.), vacated as moot, 223 F.3d 1054 (8th Cir. 2000) (en banc).

168.   On September 28, 2004, Magistrate O. Edward Schlatter issued an Order recommending that Smith's lawsuit be dismissed.

169.   On October 7, 2004, Smith filed Objections to Proposed Findings and Recommendations, numbering twenty-seven pages in length, alleging in particular that (a) Defendants Anderson, et al., had not followed the binding precedent of the Circuit in their dismissal of his claims in *Smith v. Mullarkey*, No. 02-1461, (b) the harm he suffered was a direct consequence of the application of 10th Cir. R. 36, and (c) that his was an injury "capable of repetition, but evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973).

170.   Pursuant to Fed. R. Civ. P. 72(b), Defendant Blackburn was required by law to "make a *de novo* determination on the record ... of any portion of the magistrate judge's disposition to which specific written objection has been made."

171.   On information and belief, the expected standard of review under Rule 72(b) follows:

> Under Section 636(b)(1)(B) the district court must, "actually exercise its discretion, rather than summarily accepting or denying" the magistrate judge's findings. *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000). It is reversible error for the district court to fail to conduct such review. *See e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996). In this Circuit, "a brief order expressly stating the court conducted the de novo review" may suffice (Id.), but an appellate court must be sufficiently persuaded that a district judge has exercised the non- delegable authority by actually considering the parties' objections, "and not merely by reviewing the magistrate's report." *Gee v. Estes*, 829 F.2d 1005, 1008-09 (10th Cir.1987) (per curiam).

172.   On or about October 15, 2004, Defendant Blackburn issued a summary Order adopting

the recommendations of Magistrate Schlatter in toto, without identifying any of Smith's objections, to say nothing of offering an independent explanation as to why they should not carry the day.

173. On information and belief, based upon a survey of subsequent cases in which Defendant Blackburn adopted the magistrate's recommendation in litigation brought by pro se parties, it was his standard practice to use a boilerplate incantation[11] to dismiss all pro se lawsuits, betraying no indication whatever that he had performed the statutorily required de novo review.

174. On information and belief, it is Defendant Blackburn's de facto policy to refuse to review his magistrate's recommendations in civil cases brought by pro se plaintiffs, as required by Fed. R. Civ. P. 72.

175. On information and belief, Defendant Blackburn consistently conceals his failure to perform the review required of him by statute by fraudulently claiming that objections raised by pro se plaintiffs -- including seasoned attorneys (*e.g., Cogswell v. United States Senate*, No. 08-cv-01929-REB-MEH (D.Colo. Mar. 2, 2009) -- are "imponderous and without merit."

---

[11] A brief survey of decisions involving pro se civil litigants by Defendant Blackburn (conducted for purposes of submission of a judicial ethics complaint) reveals those litigants received the "incantation": *Shell v. Devries*, No. 06-cv-00318-REB-BNB (D.Colo. Jan. 30, 2007); *Gallegos v. ACE Express - Coach USA*, No. 06-cv-00408-REB-BNB (D.Colo. Jan. 19, 2007); *Automated Lending, Inc. v. Ransom*, No. 05-cv-02487-REB-MEH (D.Colo. Nov. 30, 2006); *Signer v. Pimkova*, No. 05-cv-02039-REB-MJW (D.Colo. Nov. 30, 2006); *Baldauf v. Garoutte*, No. 03-RB-01104 (D.Colo. Jul. 20, 2006); *Williams v. United States Forest Service*, No. 05-cv-01277-REB-BNB (D.Colo. Jun. 27, 2006); *Martin v. Directors Guild of America*, No. 06-cv-00609-REB-MJW (D.Colo. May 16, 2006); *Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS (D.Colo. Feb. 08, 2006); *Calvert v. Safranek*, No. 05-cv-001713-REB-PAC (D.Colo. Jan. 30, 2006); *Lawton v. Center Stock Company, LLC*, No. 06-cv-01125-REB-MEH (D.Colo. Jan. 19, 2006); *Stetzel v. Attorney General of the State of Colorado*, No. 04-cv-01531-REB-BNB (D.Colo. Jan. 3, 2006) (all Versuslaw). The complaint, styled *In re Nottingham and Blackburn*, No. 07-10-372-07 (Tenth Cir. Jud. Council 2007), is available at http://www.knowyourcourts.com/Smith/07-10-372-07/2007-02-12_ethicsComplaint.pdf.

176.   On information and belief (informed by Smith's review of the actual recommendations by the magistrate and the pro se plaintiff's objections), the objections in question are as a general rule meritorious and anything but "imponderous."

177.   On information and belief, Defendant Blackburn did not perform a de novo review of the matter which took Smith's objections into account.

178.   On information and belief, every judge of the Tenth Circuit either knew or had reason to know that Defendant Blackburn and former Judge Nottingham routinely failed to perform proper de novo reviews of magistrate recommendations.

179.   Smith filed a timely appeal of Judge Blackburn's decision.

180.   On information and belief, the appeal was assigned to Defendants Baldock, Holloway, and Seymour, acting in their representative capacity as agents of the Tenth Circuit.

181.   Briefing was completed in the Non-Publication Cases on March 9, 2005.

182.   Oral argument was not granted in the Non-Publication Cases.

183.   On Information and belief, the appeal in the Non-Publication Cases was terminated on May 8, 2007.

184.   No dissenting opinion was filed in the Non-Publication Cases.

185.   On information and belief, the appeal in *New England Health Care Employees Pension Fund v. Woodruff*, No. 06-1482 (10th Cir. Jan. 16, 2008) (hereinafter, "*Woodruff*") was assigned to a panel which included Defendant Baldock.

186.   On information and belief, briefing was completed on *Woodruff* on May 8, 2007.

187.   On information and belief, oral argument was held regarding *Woodruff* on Oct. 10, 2007.

188.   On information and belief, the appeal in *Woodruff* was terminated on January 16, 2008.

189.   On information and belief, a complex appeal involving numerous litigants, requiring a panel of the Tenth Circuit to pore over hundreds of pages of briefs and thousands of pages of appendices, further meriting both oral argument and the writing of a twenty-seven page opinion (including a dissent by Defendant Briscoe), required less than eight months from the close of briefing -- and barely more than two months from oral argument -- to complete.

190.   By contrast, a relatively simple appeal with only three parties that was not granted oral argument and did not require a dissent took twenty-six months to complete.

191.   On information and belief, there is no rational explanation for the interminable delay in issuance of an opinion by Defendants Baldock, Holloway, and Seymour in the Non-Publication Cases.

192.   On information and belief, Defendants Baldock, Holloway, and Seymour willfully and deliberately denied Smith's federal right to equal access to the courts of the Tenth Circuit.

193-200.   [Reserved.]

### E.   Regarding Defendant Arguello and Does Unknown

201.   As an Article III judge, Defendant Arguello is charged with the knowledge that the First Amendment protects all expression short of so-called "true threats" -- encompassing only "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," *Virginia v. Black*, 538 U.S. 343, 359 (2003) (citations omitted).

202.   As an Article III judge, Defendant Arguello is further charged with knowledge that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to incit-

ing or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U. S. 444, 447 (1969) (per curiam).

203. As we expect our courtrooms to be redoubts of reason and judges, repositories of great wisdom, we have a concomitant right to trust judges to use common sense in their interpretation of statutory law, asking them to interpret it in a manner that avoids absurd results. *See e.g., Clinton v. City of New York*, 524 U. S. 417, 429 (1998); *Church of Holy Trinity v. United States*, 143 U. S. 457, 459 (1892).

204. Smith has a legal right and a moral duty as an advocate to point out to a court that its proposed reading of the law would lead to absurd results.

205. As an Article III judge, Defendant Arguello is charged with the knowledge that the First Amendment protects political hyperbole, which "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U. S. 254, 270 (1964).

206. As an Article III judge, Defendant Arguello is further charged with knowledge that the context, and **expressly conditional nature** of [a] statement," *Watts v. United States*, 394 U.S. 705, 708 (1969) (emphasis added), bear considerable if not controlling weight as to whether a statement qualifies as a constitutionally proscribable "true threat."

207. As an Article III judge, Defendant Arguello is further charged with knowledge that our Declaration of Independence states, in pertinent part:

> We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. — That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, — That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its

foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness. Prudence, indeed, will dictate that Governments long established should not be changed for light and transient causes; and accordingly all experience hath shewn that mankind are more disposed to suffer, while evils are sufferable than to right themselves by abolishing the forms to which they are accustomed. **But when a long train of abuses and usurpations, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism, it is their right, it is their duty, to throw off such Government, and to provide new Guards for their future security.**

The Declaration of Independence, para. 2 (U.S. 1776) (emphasis added).

208.  The United States Oath of Citizenship states:

I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, of whom or which I have heretofore been a subject or citizen; **that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic**; that I will bear true faith and allegiance to the same; that I will bear arms on behalf of the United States when required by the law; that I will perform noncombatant service in the Armed Forces of the United States when required by the law; that I will perform work of national importance under civilian direction when required by the law; and that I take this obligation freely, without any mental reservation or purpose of evasion; so help me God.

8 C.F.R. § 337.1(a) (emphasis added).

209.  As an Article III judge, Defendant Arguello is charged with the knowledge that the judge who assumes authority not granted to that judge under the Constitution has literally become an enemy of the Constitution, as no "judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron*, 358 U.S. 1, 18 (1958).

210.  As an article III judge, Defendant Arguello is further charged with the knowledge that the right to revolution that our Framers invoked as legal justification for the American Revolution is an essential corollary of the inalienable right to defend our lives and liberties, Mass. Const. Part I, Art. I, and that the Framers enacted the Second Amendment so that they could be defended by more than cross words. *See generally, District of Columbia v. Heller*, 554 U.S. ___, 128 S.Ct.

2783 (2008).

211.  As an article III judge, Defendant Arguello is further charged with the knowledge that she has an unswerving duty to interpret the Constitution in accordance with the intent of the Framers -- as the Supreme Court has done hundreds and hundreds of times -- often engaging in laborious historical reviews. *E.g., Heller, supra.*

212.  As our judges have a duty to interpret the Constitution in accordance with the Framers' intent, Smith has both a First Amendment right and a duty to instruct the Court as to what their intent was, even when the substance of their statements might make a judge uncomfortable.

213.  In the "Summary Of the Argument" section of the Rule 59(e) Motion, Smith submitted in *Smith v. Krieger, supra*, Smith wrote, in pertinent part:

> In this Motion, it will be proven that, if your absurd decision is permitted to stand, there is no discernible difference between Saddam Hussein and Marcia Krieger, and that we as citizens have both a legal right and a moral duty to assassinate our federal judges. **It is, as any veteran law professor will instantly recognize, the ultimate "parade of hor-ribles" argument -- as it is abundantly clear that neither the Framers nor Congress intended such a ludicrous outcome**, and the statutory provision you have been asked to interpret does not permit you to carve out an exception for you and your fellow judges from accountability under law, your decision must be withdrawn.

Rule 59(e) Mot. To Alter Or Amend Judgment [Dkt. #112], *Smith v. Krieger*, supra (filed Aug. 21, 2009) at 3.

214.  Smith concluded his argument in the aforementioned Motion by stating:

> The notion that even the King of England may be held to account for his actions at law, both in an action lying in mandamus and in tort, but federal judges are so high above the law that they cannot be bound to follow it, is offensive to the very concept of the rule of law. But this is what this Court has ruled, whether out of ignorance or thoughtlessness. This decision cannot in reason be defended, and ought to be reconsidered.

Id. at 53.

215.  On information and belief, Defendant Arguello, charged with the knowledge that Smith's

statements were clearly protected by the First Amendment, persuaded agents of the United States

Marshal Service to visit Smith at his home for the purpose of harassment and intimidation.

216.   During the above-referenced visit, Smith was informed that he was placed on a "threat

list," and that he would no longer be free to enter our nation's courthouses without harassment by

officers of that agency.

217.   In a later visit to the Arraj Courthouse for the purposes of filing a document, Smith was

escorted to the file room by a United States Marshal, known only as "Boomer."

218.  Section 241 of Title 18 of the United States Code states, in pertinent part:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in
> any State ... in the free exercise or enjoyment of any right or privilege secured to him by
> the Constitution or laws of the United States, or because of his having so exercised the
> same;... They shall be fined under this title or imprisoned not more than ten years, or
> both.

219.   Smith has in fact been threatened, oppressed, and intimidated by the actions in question,

and has not entered the Arraj Courthouse for fear of further reprisal since the incident as related.

220.   Smith could not have been placed on a threat list in the absence of a conspiracy between

Defendant Arguello and at least one Doe.

221-230.   [Reserved.]

## F.   Regarding Defendants Fox and Sorenson

231.   Defendants Fox and Sorenson are charged with the knowledge that "an attorney owes a

duty to his adversary not to engage in fraudulent or malicious conduct, or to commit intentional

torts," *Allied Financial Services, Inc. v. Easley*, 676 F.2d 422, ___, 1982.-C10.40202, ¶ 12 (10th

Cir. 1982) (citations omitted), and that "[o]ne may not use his license to practice law as a shield

to protect himself from consequences of participation in unlawful conspiracy." *Wahlgren v.*

*Bausch & Lomb Optical Co.,* 68 F.2d 660, 664 (7th Cir. 1934).

232.   As Assistant United States Attorneys, Defendants Fox and Sorenson are charged with the knowledge that

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all. ... As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with earnestness and vigor -- indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.

*Berger v. United States*, 295 U.S. 78, 88 (1935)

233.   As Assistant United States Attorneys, Defendants Fox and Sorenson are charged with the knowledge that Fed. R. Civ. P. 11 creates a safe harbor against filing sanctions for those actions wherein a party can state, to the best of the his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that "the claims, defenses, and other legal contentions [presented to a given court] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

234.   Defendants Fox and Sorenson are charged with the knowledge that a "claim or defense is frivolous if a proponent can present no rational argument based on the evidence or law in support of his claim or defense." *Black's Law Dictionary* 668 (6th ed. 1990) (citing a Colorado case).

235.   Defendants Fox and Sorenson were on notice as to the legal and factual basis of claims presented by Smith to the various courts of this Circuit, as Smith -- aware of the persistent and relentless discrimination against pro se litigants practiced in this Circuit -- observes a standard practice of explaining the legal and factual basis for the claims he presents to the Court.

236.   During the course of legal representation of their nominal clients, Defendants Fox and

Sorenson knowingly and intentionally made an array of false and misleading representations to courts they appeared before, with the intention of deceiving courts into wrongfully and illegally depriving Smith of his First, Fifth, and/or Tenth Amendment right of access to the courts and intimidating Smith into abandonment of said rights.

237-240. [Reserved.]

## FIRST CLAIM FOR RELIEF
(*Bivens* First Amendment retaliation claim -- *Dombrowski v. Pfister*[12])

241.  Plaintiff realleges and incorporates herein all previous allegations by reference.

242.  In filing lawsuits, Plaintiff was engaging in the constitutionally protected activities of free speech and petitioning his government for redress of legitimate grievances.

243.  Plaintiff's speech was related to matters of public concern.

244.  The Defendants' acts of intimidating and threatening Plaintiff were motivated by his lawful exercise of constitutionally protected conduct.

---

[12] In the above-referenced case, the United States Supreme Court observed:

> A criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedoms. **When the statutes also have an overbroad sweep**, as is here alleged, **the hazard of loss or substantial impairment of those precious rights may be critical.** For in such cases, the statutes lend themselves too readily to denial of those rights. The assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded in such cases. **For "[t]he threat of sanctions may deter ... almost as potently as the actual application of sanctions. ..."** Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression -- of transcendent value to all society, and not merely to those exercising their rights -- might be the loser.

*Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (emphasis added).

245. The Defendants' actions caused Plaintiff to suffer injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity.

246. Plaintiff has in fact refrained from engaging in constitutionally protected activity and/or exercising his rights as protected by federal law as a direct result of the threats, intimidation, and acts of harassment committed by the Defendants.

247. The Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

248. The Defendants' acts were done under color of federal law.

249. The Defendants engaged in the conduct described by this Complaint intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Smith's federally protected constitutional rights.

250. As a direct and/or proximate result of the Defendants' concerted unlawful and malicious conduct, Plaintiff has suffered and will continue to suffer substantial damages, including loss of income, harm to his career and personal reputation, the denial of a livelihood, emotional distress, and the loss of his constitutional liberties.

251. Further, the constitutional rights the Defendants violated are well-established and long-standing. As a result, Defendants' conduct contravened clearly established constitutional rights which reasonable persons would have known. Thus, Defendants' acts were intentional, wanton, malicious, reckless, and/or oppressive, thereby entitling Plaintiff to punitive damages.

252-260. [Reserved.]

## SECOND CLAIM FOR RELIEF
(*Bivens*: Deprivation of federal rights under color of law[13])

261.  Plaintiff realleges and incorporates herein all previous allegations by reference.

262.  At all relevant times herein, Plaintiff had a right under the due process and equal protection clauses of the federal constitution to present claims grounded in federal law for adjudication in a state court, to have those claims heard by a fair and impartial tribunal, and to due process of law and to equal protection under the law throughout the adjudicative process in both federal and state courts.

263.  Acting under the color of law, the Defendants worked a denial of Plaintiff's rights, privileges, or immunities secured by the United States Constitution or by Federal law and guaranteed by the First, Fifth, and/or Tenth Amendments to the Constitution of the United States, to wit, he was denied access to the courts, due process of law, and/or equal protection of the law.

264.  Plaintiff has been intentionally treated differently from others similarly situated, and there is no rational basis for the difference in treatment.

265.  Plaintiff is a "class of one" for purposes of federal equal protection analysis.

266.  The Defendants acted with recklessness and deliberate indifference to Plaintiff's constitutional rights.  As a direct and proximate result of these acts and/or omissions, Plaintiff's First, Fifth, and/or Tenth Amendment rights under the law were violated.

267.  As a result of the Defendants' concerted unlawful and malicious conduct, Plaintiff was both deprived of his rights to equal protection of all the laws and to due process of law, and the

---

[13] Congress normalized *Bivens* actions in the Westfall Act, in stating that the Act does not extend or apply to a civil action against an employee of the Government which is brought for a violation of the Constitution of the United States.  28 U.S.C. § 2679 (b)(2).

due course of justice was impeded, in violation of the First, Fifth, and/or Tenth Amendments of the Constitution of the United States.

268.   As a direct and/or proximate result of the Defendants' concerted unlawful and malicious conduct, Plaintiff has suffered and will continue to suffer substantial damages, including loss of income, harm to his career and personal reputation, the denial of a livelihood, emotional distress, and the loss of his constitutional liberties.

269.   Further, the constitutional rights the Defendants violated are well-established and long-standing. As a result, Defendants' conduct contravened clearly established constitutional rights which reasonable persons would have known. Thus, Defendants' acts were intentional, wanton, malicious, reckless, and/or oppressive, thereby entitling Plaintiff to punitive damages.

**WHEREFORE**, Smith respectfully requests that this Court enter judgment in his favor and against the Defendants, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;

(b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c) All economic losses on all claims allowed by law;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e) Attorneys fees and the costs associated with this action;

(f) Pre- and post-judgment interest at the lawful rate, and

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 3rd day of November, 2009.

/s/

Kenneth L. Smith, *in propria persona*
23636 Genesee Village Rd.
Golden, CO  80401
Phone: (303) 526-5451
19ranger57@earthlink.net